BWB:GKS
F.# 2016R00461

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER IDS 100008173838734, 100011055313545, 100009641674292, 100010662103585, 100009396248807 AND 100007808476131 AND USER NAME PRINCESS.I.PARKER THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC | APPLICATION FOR A SEARCH WARRANT FOR INFORMATION IN POSSESSION OF A PROVIDER (FACEBOOK ACCOUNT)<br><br>Case No. _____ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, LESLIE ADAMCZYK, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user IDs, specifically 100008173838734, 100011055313545, 100009641674292, 100010662103585, 100009396248807 AND 100007808476131 AND USER NAME PRINCESS.I.PARKER (the "Subject Facebook Accounts") that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the

user ID. As described in further detail below, there is probable cause to believe contained within the Facebook accounts is evidence, fruits or instrumentalities of the offenses of or activities relating to: communications containing threats to injure the reputation of another, with the intent to extort from that person things of value, that is, images of a minor person in various states of undress, naked and engaging in sexually explicit conduct, in violation of 18 U.S.C. § 875(d); sexual exploitation of children in violation of 18 U.S.C. § 2251(a); material constituting or containing child pornography, in violation of 18 U.S.C. § 2252 and 2252A; harassment and intimidation using an interactive computer service and facility of interstate commerce, to engage in a course of conduct that caused substantial emotional distress, in violation of 18 U.S.C. § 2261A(2)(B) (the "Subject Offenses").

2. I have been a Special Agent with the FBI since August 2012 and am currently assigned to the New York Office. Since October 2014, I have been assigned to a Crimes Against Children squad and have investigated violations of criminal law relating to the sexual exploitation of children. I have gained expertise in this area through classroom training and daily work conducting these types of investigations. As a result of my training and experience, I am familiar with the techniques and methods used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities. As part of my responsibilities, I have been involved in the investigation of numerous child pornography ("CP") cases and have reviewed thousands of photographs depicting minors (less than eighteen years of age) being sexually exploited by adults. Through my experience in these investigations, I have become familiar with methods of determining whether a child is a minor. I am also a member of the Eastern District of New York Project Safe Childhood Task Force.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

**A. The Instant Offenses**

4. I have been involved in the investigation of an individual named CHRISTOPHER ARROYO. In June 2015, an FBI Special Agent interviewed a female minor born on June 4, 2000, whose initials are A.C. A.C. provided agents with information that ARROYO, among other things, induced and enticed A.C.—while A.C. was a minor—to send ARROYO one or more images of A.C. in various stages of undress. One or more of the photographs sent by A.C. to ARROYO at ARROYO's behest were of A.C.'s bare lower body, bent over, taken from behind. According to A.C., A.C. sent ARROYO approximately 15 digital images over the Internet at ARROYO's demand over a two year time period, including pictures of her masturbating.

5. On February 22, 2016, the Honorable Steven M. Gold, United States Magistrate Judge, signed a search warrant authorizing the search of CHRISTOPHER ARROYO's residence at 10520 66th Avenue, Apartment 6A, Forest Hills, New York 11375 and seizure of items listed in the search warrant (the "February Search Warrant"). (16-Misc-144.) A copy of the search warrant an affidavit are attached hereto as Exhibit A and incorporated fully herein.

6. As described in detail in the February Search Warrant, approximately one year into their relationship, A.C. attempted to break up with CHRISTOPHER ARROYO. ARROYO told A.C. that if A.C. broke up with him and stopped sending him pictures, he would post the

3

pictures A.C. had sent him on the Internet and make A.C. look like a "slut." ARROYO also threatened to send people to A.C.'s house to help A.C. take the pictures. Due to the threats, A.C. continued to date him. In June 2014, A.C. attempted to break up with ARROYO again and A.C. began to receive harassing messages from people on-line telling her that she had to re-establish contact with ARROYO and date him again or they would post her graphic photographs all over the Internet and tell her parents. A.C. was forced to start dating ARROYO again due to the harassment. When she refused to send additional pictures, ARROYO said he would make the harassers make her love him again.

7. In January 2015, A.C. broke up with CHRISTOPHER ARROYO for good because of his demands for graphic photographs. As set forth in the February Search Warrant, A.C. began to receive messages from different individuals, primarily through numerous Facebook accoutns, harassing her and telling her to re-establish contact with ARROYO and date him again. Some of the pictures A.C. had sent ARROYO were distributed electronically through Facebook to A.C.'s friend, another minor. A.C. continued to receive harassing and threatening messages from various user accounts on Facebook, Skype and through online communications services provided via the Xbox gaming console. A.C. and her bother also found postings about A.C., including pictures of A.C. in various states of undress, on a social media sites named DeviantART, Pinterest, Twitch, Imgur, Google Plus, Twitter, and Facebook.

8. On February 25, 2016, the defendant CHRISOPHER ARROYO was arrested by FBI agents for knowingly receiving and distributing child pornography, in violation of Title 18 United States Code Section 2252(a)(2), and transmitting communications in interstate commerce containing threats to injury the property or reputation of the addressee with intent to extort from the address things of value, in violation of Title 18, United States Code, Section 875(d). The

defendant was arraigned before the Honorable Steven M. Gold, United States Magistrate Judge, on February 25, 2016. United States v. Arroyo, 16-MJ-162 (E.D.N.Y.). The complaint is attached hereto as Exhibit B and the facts stated therein are incorporated herein.

9. The defendant was advised of his Miranda rights when agents encountered him on February 25, 2016. He stated he understood his rights, verbally waived his Miranda rights and indicated he wanted to speak to agents without a lawyer present. In sum and substance, the defendant stated, among other things, that he had asked A.C. to send him pornographic images and that he had received pornographic images of A.C. from A.C. via the Internet. The defendant further stated that he had communicated threats to A.C. via the Internet to the effect that he would post one or more pornographic images of A.C. if she were to terminate her relationship with the defendant.

10. When the defendant spoke to law enforcement agents, he also provided preliminary information identifying at least two more victims to whom he sent threatening communications and from whom he received images that may constitute CP. Law enforcement agents have identified the two additional victims, whose initials are T.R. and E.P. Law enforcement agents have spoken to both T.R. and E.P. and they live outside of New York. Both have confirmed that CHRISTOPHER ARROYO actively solicited them through various social media platforms, including Facebook, for images in various states of undress while both victims were still minors. They have also confirmed that they received threats and harassment from online accounts believed to be connected to ARROYO.

11. The victims received threatening and harassing messages from accounts belonging to, among others, individuals known as "Eman Tsal" and "David Smith." When he

spoke to law enforcement agents, CHRISTOPHER ARROYO confirmed that he, in fact, used "Eman Tsal" and "David Smith" as aliases for purposes of communicating with A.C. and others. He further confirmed that he created Facebook accounts in the name of "David Smith" and "Eman Tsal" for purposes of these communications. ARROYO further confirmed that he created fake Facebook accounts in the names of T.R. and A.C. for purposes of carrying out his harassment of these victims.

### B. The Subject Facebook Accounts

12. Facebook user ID 100008173838734 belongs to a user named "Last Chance." When he spoke to law enforcement agents, CHRISTOPHER ARROYO confirmed that he created this account for purposes of harassing T.R. Thus, there is probable cause to believe that the account of this Facebook user ID contains evidence, fruits and instrumentalities of the Subject Offenses.

13. Facebook user ID 100007808476131 belongs to a user with A.C.'s name. CHRISTOPHER ARROYO has confirmed to agents that he created this account using the name of A.C. for purposes of harassing A.C. There is thus probable cause to believe that the account of this Facebook user ID contains evidence, fruits and instrumentalities of the Subject Offenses.

14. Facebook user ID 100009641674292 belongs to a user named "Eman Tsal." As described above, CHRISTOPHER ARROYO has confirmed to law enforcement agents that one of his aliases is "Eman Tsal," that he created a Facebook account in the name of "Eman Tsal" and that he used the Facebook account of "Eman Tsal" to send harassing and threatening messages to the victims. There is thus probable cause to believe that the account of this Facebook user ID contains evidence, fruits and instrumentalities of the Subject Offenses.

15. Facebook user ID 100010662103585 belongs to a user named "David Smith." As described in the February Search Warrant, A.C. received harassing and threatening messages via the Facebook account of "David Smith." CHRISTOPHER ARROYO has confirmed that "David Smith" is one of his aliases, that he created the Facebook account of "David Smith" and that he used the Facebook account of "David Smith" to send harassing and threatening messages to the victims. There is thus probable cause to believe that the account of this Facebook user ID contains evidence, fruits and instrumentalities of the Subject Offenses.

16. Facebook user ID 100011055313545 belongs to CHRISTOPHER ARROYO. When he spoke to law enforcement agents, ARROYO confirmed that this is his real Facebook account. As set forth in the February Search Warrant, ARROYO used this Facebook account to communicate with the victims and carry out the Subject Offenses. There is thus probable cause to believe that the account of this Facebook user ID contains evidence, fruits and instrumentalities of the Subject Offenses.

17. Facebook user ID 100009396248807 is A.C.'s real Facebook account. As set forth above and in the February Search Warrant, CHRISTOPHER ARROYO sent this Facebook account numerous harassing and threatening messages and solicited pictures of A.C. in various states of undress. There is thus probable cause to believe that the account of this Facebook user ID contains evidence, fruits and instrumentalities of the Subject Offenses.

18. The Facebook account associated with the user name princess.i.parker belongs to the recently-identified victim who is described above as E.P. Law enforcement agents have spoken with E.P. who confirmed communicating with ARROYO through this Facebook account. There is thus probable cause to believe that the account of this Facebook user ID contains evidence, fruits and instrumentalities of the Subject Offenses.

### C. Background Regarding Facebook

19. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

20. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

21. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

22. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook

users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

23. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

24. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

25. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on

Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

26. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

27. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

28. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

29. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

30. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

31. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

32. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

33. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

34. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

35. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a

Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

36. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

37. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which

users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

38. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

39. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## **CONCLUSION**

40. Based on the forgoing, I request that the Court issue the proposed search warrant.

41. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

42. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

LESLIE ADAMCZYK
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on July 5, 2016

HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the FACEBOOK USER IDS 100008173838734, 100011055313545, 100009641674292, 100010662103585, 100009396248807 AND 100007808476131 AND USER NAME PRINCESS.I.PARKER (the "Subject Facebook Accounts") that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I.  **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including, for the Subject Facebook Accounts, full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of communications containing threats to injure the reputation of another, with the intent to extort from that person things of value, that is, images of a minor person in various states of undress, naked and engaging in sexually explicit conduct, in violation of 18 U.S.C. § 875(d); sexual exploitation of children in violation of 18 U.S.C. § 2251(a); material constituting or containing child pornography, in violation of 18 U.S.C. § 2252 and 2252A; harassment and intimidation using an interactive computer service and facility of interstate commerce, to engage in a course of conduct that caused substantial emotional distress, in violation of 18 U.S.C. § 2261A(2)(B)  (the "Subject Offenses"), all involving CHRISTOPHER ARROYO since 2012, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Communications involving the Subject Facebook Accounts;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

(e) The identity of the person(s) who communicated with the Subject Facebook Accounts about matters relating to the Subject Offenses, including records that help reveal their whereabouts.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c. such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____ _____
Date                                                      Signature